Richard H. Schoenberger (Bar No. 122190)
Spencer J. Pahlke (Bar No. 250914)
Walkup, Melodia, Kelly & Schoenberger
650 California St. 26th Floor
San Francisco, CA 94108
Telephone: (415) 981-7210
Facsimile: (415) 391-6965
Email: rschoenberger@walkuplawoffice.com

Barron L. Weinstein (Bar No. 067972)
Shanti Eagle (Bar No. 267704)
MEREDITH, WEINSTEIN & NUMBERS, LLP
115 Ward Street
Larkspur, CA 94939
Telephone: (415) 927-6920
Facsimile: (415) 927-6929
Email: bweinstein@mwncov.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pascual Trujillo, Leticia Trujillo, and Gregory Trujillo,<br><br>    Plaintiffs,<br><br>v.<br><br>Nationwide Insurance Company of America, Nationwide Mutual Insurance Company, Nationwide Sales Solutions, Inc., and DOES 1-50, Inclusive,<br><br>    Defendants. | CASE NO. 2:12-at-01573<br><br>**COMPLAINT FOR BREACH OF CONTRACT; FRAUD; NEGLIGENT MISREPRESENTATION; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; B&P §§ 17200 ET SEQ.; DECLARATORY RELIEF; REFORMATION**<br><br>**JURY TRIAL DEMANDED** |

1

COMPLAINT

Plaintiffs Pascual Trujillo, Leticia Trujillo, and Gregory Trujillo (collectively "Trujillos" or "Plaintiffs"), hereby allege:

## JURISDICTION AND VENUE

1. This court has diversity jurisdiction over this matter under 28 U.S.C. § 1332, as more specifically alleged below, in that the parties are of diverse citizenship and the matter in controversy, exclusive of interest and costs, exceeds $75,000.00. In addition, Plaintiffs bring their cause of action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.

2. The claims involved in this action arose in the Eastern District of California, in that the majority of the events, acts, and/or omissions described below occurred in Nevada County, California. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

3. Plaintiffs Pascual Trujillo, Leticia Trujillo, and Gregory Trujillo at all times mentioned herein were and are individuals residing in Grass Valley, CA. Plaintiffs are, and at all relevant times were, residents and citizens of California.

4. Plaintiffs are informed and believe, and on that basis allege, that Nationwide Insurance Company of America ("NICOA") at all times mentioned herein was and is a Wisconsin corporation with its principle place of business in Des Moines, Iowa. Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned herein NICOA was and is a California admitted insurance carrier in the business of writing and selling insurance policies in the State of California.

5. Plaintiffs are informed and believe, and on that basis allege, that Defendant Nationwide Mutual Insurance Company ("Nationwide Mutual") at all times mentioned herein was and is an Ohio corporation with its principle place of business in Columbus, Ohio. Plaintiffs

are informed and believe, and on that basis allege, that at all times mentioned herein Nationwide Mutual was and is a California admitted insurance carrier in the business of writing and selling insurance policies in the State of California.

6. Plaintiffs are informed and believe, and on that basis allege, that Defendant Nationwide Sales Solutions, Inc. ("Nationwide Sales") at all times mentioned herein was and is an Iowa corporation with its principle place of business in Iowa. Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned herein Nationwide Sales was and is an agent of NICOA and/or Nationwide Mutual, and sold and/or distributed insurance policies in the State of California. NICOA, Nationwide Mutual, and Nationwide Sales are collectively referred to hereinafter as "Nationwide" or Defendants.

7. Plaintiffs are informed and believe, and on that basis allege, that the true names and capacities, whether individual, corporate, associate or otherwise of DOES 1 through 50 are unknown to Plaintiffs who, therefore, sue them by said fictitious names. Plaintiffs are informed and believe, and on that basis allege, that each of the defendants designated as a DOE is legally responsible in some manner for the events and happenings described herein, and legally and proximately caused injury and damages thereby to Plaintiffs as herein alleged, and Plaintiffs will ask leave of Court to amend the Complaint to insert the true names and capacities of the defendants designated DOE and state appropriate charging allegations, when that information has been ascertained and to join such defendants in this action.

8. Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, each Defendant was the agent, servant, employee, partner, joint venture and/or co-conspirator of each and every other Defendant and, in doing the acts herein alleged, was acting within the scope of, and pursuant to, such agency, employment, partnership, joint venture and/or conspiracy. Alternatively, Plaintiffs are informed and believe that each Defendant ratified, approved or condoned the actions of every other Defendant.

## GENERAL ALLEGATIONS

9. Plaintiffs Pascual and Leticia Trujillo have been Nationwide insureds for over 25 years. Gregory Trujillo is the son of Mr. and Ms. Trujillo, and at all times relevant herein resided with his parents at their home in Grass Valley, California.

10. At all times relevant herein, Plaintiffs were insureds under a primary auto insurance policy with Nationwide.

11. In or about August 2006, Plaintiff Pascual Trujillo contacted Nationwide to inquire about umbrella coverage. Specifically, Plaintiffs were seeking additional uninsured and underinsured motorist coverage above what was available through their primary auto insurance. Mr. Trujillo asked the Nationwide representative about this coverage, and the representative assured him that uninsured/underinsured motorist coverage was included in the Umbrella Policy that Nationwide offered.

12. Based on this information, Plaintiffs Pascual and Leticia Trujillo filled out an application for Umbrella coverage on or about August 10, 2006. On that application, Mr. Trujillo expressly requested Uninsured and Underinsured Motorist coverage by checking the box stating "I have been offered and selected Uninsured/Underinsured Motorists Coverage." The Trujillos would not have purchased the policy if it had not included this specific coverage.

13. The Trujillos were issued Nationwide Mutual Insurance Company Umbrella Policy No. 7204PU006431 ("the Nationwide Mutual Umbrella Policy") in 2006. The policy was thereafter continuously renewed through at least August of 2008.

14. The application for insurance was sent to the Trujillos at their residence in Grass Valley, CA, and the policy was signed by Nationwide in Sacramento, CA.

15. The Trujillos paid their premiums through Nationwide's Electronic Fund Transfer automated payment system, and correspondence regarding premiums and renewals was sent by Nationwide electronically.

16. In or about August of 2008 the Nationwide Mutual Umbrella Policy was re-issued with a different Nationwide affiliate company, Nationwide Insurance Company of America, and a new policy number, PENC2723454722 ("the NICOA Umbrella Policy"), with no lapse in coverage and without any new application being filled out by the Trujillos. (Together, the NICOA Umbrella Policy and the Nationwide Mutual Umbrella Policy are referred to herein after as the "Nationwide Umbrella Policies"). The Trujillos were not required to sign or return any acknowledgment regarding any changes to the policy. The Trujillos' premium payments continued to be processed through Electronic Fund Transfer automated payment system. The NICOA Umbrella policy was renewed annually and remained in effect through at least 2011.

17. In or about December 9, 2010, Gregory Trujillo was involved in a serious automobile accident involving an uninsured motorist. The accident occurred in California. Gregory suffered catastrophic injuries which have resulted in significant and ongoing medical issues, the damages from which well exceed the primary insurance limits of the Trujillos' auto policy. At the time of the accident, Gregory Trujillo was a minor residing with his parents in Grass Valley, CA.

18. The Trujillos tendered the claim to Nationwide under both the primary and the umbrella policies. Nationwide has paid the full limits of the primary auto policy.

19. On or about July 26, 2011, Nationwide denied coverage under the NICOA Umbrella Policy, claiming that the policy did not afford Uninsured/Underinsured Motorist Coverage, because that coverage had been eliminated in 2008 when NICOA took over Nationwide Mutual's book of business for auto policies.

20. The Trujillos were shocked to learn that Nationwide was denying that its umbrella policy provided the very type of coverage for which they had purchased the policy, specifically to protect themselves in case of the exact type of catastrophic accident that occurred. Had the Trujillos at any point been aware that it was Nationwide's position that the umbrella policy did not include Uninsured/Underinsured Motorist Coverage, they would not have purchased that policy.

21. Nationwide continues to deny coverage under the NICOA Umbrella Policy for the injuries and damages resulting from Gregory Trujillo's accident.

22. Plaintiffs assert that the NICOA Umbrella Policy affords coverage for the damages resulting from Gregory Trujillo's December 9, 2010 accident. The NICOA Umbrella Policy affords coverage in excess of the policy's "retained limits," which include "the total limits of any underlying insurance or any other insurance that applies to an occurrence or offense which ... are available to an insured ...." The "underlying insurance or any other insurance" available to the Trujillos included the primary auto policy that afforded Uninsured/Underinsured motorist coverage. The NICOA Umbrella Policy contains an endorsement entitled "Auto Liability Following Form Endorsement." This endorsement expressly states that the policy affords coverage "to the extent that auto coverage is provided by underlying insurance at the time of the occurrence or offense." The underlying primary auto policy indisputably provides uninsured/underinsured motorist coverage and, accordingly, so does the NICOA Umbrella Policy.

23. In the alternative, if Nationwide is correct that it intended to delete Uninsured/Underinsured motorist coverage when it changed from Nationwide Mutual to NICOA in 2008, then Plaintiffs are informed and believe, and on that basis allege, that Nationwide did not adequately notify Plaintiffs, in "conspicuous, plain and clear" language of any new limitations, reductions, or deletions of coverage and, therefore, to the extent the Nationwide Mutual Umbrella Policy provided greater coverage than the NICOA Umbrella Policy, the terms and conditions of the Nationwide Mutual Umbrella Policy are binding on Defendants.

24. If Nationwide is correct that it sent a notice to the Trujillos of an intent to delete Uninsured/Underinsured motorist coverage when it changed from Nationwide Mutual to NICOA in 2008, then Plaintiffs are informed and believe, and on that basis allege, that Nationwide knowingly and intentionally engaged in a practice and/or scheme to renew Nationwide Mutual Umbrella Policies under the name of a different Nationwide entity, NICOA, and wrote, drafted, organized, and/or sent the notice in such a way as to obscure, hide, and/or conceal limitations

and/or differences in coverage, with the intent that policyholders be induced to renew the policies, and/or purchase the new policies, with key coverage provisions eliminated. Furthermore, Plaintiffs are informed and believe that Nationwide streamlined the renewal and/or new policy issuance process in such a way as to require policyholders to "do nothing except pay"—and, as to customers such as the Trujillos who used the automated payment option, to do nothing at all—in order that policyholders would be unlikely to notice any differences and/or limitations, with the intent that policyholders be induced to renew the policies, and/or purchase the new policies, without understanding that key coverage provisions had been eliminated from the policies.

25. If Nationwide is correct that it intended to delete Uninsured/Underinsured motorist coverage when it changed from Nationwide Mutual to NICOA in 2008, then Plaintiffs are informed and believe, and on that basis allege, that Nationwide did not comply with the notice requirements of the California Insurance Code regulating cancellation, nonrenewal, and/or renewal with reduced coverage of insurance policies.

26. Nationwide knew or had reason to believe that Plaintiffs purchased the Nationwide Umbrella Policies specifically to obtain excess uninsured/underinsured motorist coverage because Plaintiffs so informed Nationwide on their application for coverage.

27. Plaintiffs are informed and believe, and on that basis allege, that Nationwide knows that the NICOA Umbrella Policy affords uninsured/underinsured motorist coverage. Nonetheless, Nationwide has wrongfully denied and continues to wrongfully deny coverage for the damages resulting from the December 9, 2010 accident.

28. As a direct and proximate result of Nationwide's wrongful denial of coverage for the damages resulting from the December 9, 2010 accident, Plaintiffs have suffered damages including but not limited to pain and suffering, emotional distress, medical expenses, and future medical expenses in an amount to be determined.

29. As a further direct and proximate result of Nationwide's coverage denial, Plaintiffs have incurred reasonable and necessary attorneys' fees and costs to pursue Nationwide

for the policy benefits to which Plaintiffs are entitled under the Nationwide Umbrella Policies.

## FIRST CAUSE OF ACTION

### (Breach of Written Contract as to All Defendants)

30. Plaintiffs incorporate by reference as though fully set forth herein the allegations set forth in Paragraphs 1 through 29, above.

31. Nationwide agreed to provide to Plaintiffs, among other things, uninsured/underinsured motorist umbrella coverage. The NICOA Umbrella Policy affords coverage in excess of the policy's "retained limits," which include "the total limits of any underlying insurance or any other insurance that applies to an occurrence or offense which … are available to an insured …." The "underlying insurance or any other insurance" available to the Trujillos included the primary auto policy that afforded Uninsured/Underinsured motorist coverage. The NICOA Umbrella Policy contains an endorsement entitled "Auto Liability Following Form Endorsement." This endorsement expressly states that the policy affords coverage "to the extent that auto coverage is provided by underlying insurance at the time of the occurrence or offense." The underlying primary auto policy indisputably provides uninsured/underinsured motorist coverage and, accordingly, so does the Umbrella policy.

32. Further, to the extent that the terms of the NICOA Umbrella Policy do not afford Uninsured/Underinsured motorist coverage, then the terms of the Nationwide Mutual Umbrella Policy apply to afford that coverage for the December 9, 2010 accident.

33. Plaintiffs have duly performed all of the obligations on their part under all of the Nationwide Umbrella Policies, or are excused from performance by Nationwide's breach. Nationwide has breached and continues to breach the Nationwide Umbrella Policies by failing to acknowledge coverage for the damages resulting from the December 9, 2010 accident.

34. As a direct and proximate result of Nationwide's breach, Plaintiffs are inadequately insured and have suffered damages in an amount to be proven at trial, but which are

in excess of the jurisdictional amount of this Court.  These damages include, without limitation, pain and suffering, emotional distress, medical expenses, and future medical expenses.

## SECOND CAUSE OF ACTION

### (Fraud As To All Defendants)

35.   Plaintiffs incorporate by reference as though fully set forth herein the allegations set forth in Paragraphs 1 through 34, above.

36.   Nationwide issued to Plaintiffs Umbrella policies that included uninsured/underinsured motorist coverage beginning in 2006.

37.   Plaintiffs are informed and believe, and on that basis allege, that in or about 2008 Nationwide knowingly and intentionally engaged in a practice and/or scheme to renew Nationwide Mutual policies under the name of a different Nationwide entity, NICOA, and wrote, drafted, organized and/or sent notice of the entity change in such a way as to obscure, hide, and/or conceal any limitations and/or differences in coverage, with the intent that policyholders be induced to renew the policies, and/or purchase the new policies, without knowing that key coverage provisions may have been omitted.  In fact, Nationwide informed its policyholders that the entity change was "to provide even higher levels of service to our customers."

38.   Furthermore, Plaintiffs are informed and believe that Nationwide knowingly and intentionally streamlined the renewal and/or new policy issuance process in such a way as to require policyholders to "do nothing, except pay" in order that policyholders would be unlikely to notice or be aware of any material differences and/or limitations, with the intent that policyholders be induced to renew the policies, and/or purchase the new policies, without key coverage provisions.

39.   Plaintiffs are informed and believe, and on that basis allege, that at the time Nationwide issued the renewed and/or new policies in 2008, it knew that it was providing misleading information to policyholders such as the Trujillos and that the policyholders were

likely to rely on that information to their detriment.

40. In addition, Plaintiffs are informed and believe, and on that basis allege, that in or about 2008 Nationwide intentionally misrepresented that Plaintiffs would be provided information and clarification regarding any changes to their policy. Specifically, Nationwide asserts that it sent a letter which promised to provide additional information regarding differences in coverage, and promised that a licensed representative would contact Plaintiffs to review their "policies and coverage," but no such materials were sent to Plaintiffs, and no licensed representatives contacted Plaintiffs to review any changes. Plaintiffs are informed and believe, and on that basis allege, that Nationwide made these representations knowing that they were false or with reckless disregard for their truth, with the intention that Plaintiffs would rely on these statements.

41. As a direct and proximate result of these intentional misrepresentations, omissions, concealments of material facts, and/or other deceitful conduct, Plaintiffs were reasonably and foreseeably induced to renew their umbrella policy with Nationwide, and/or purchase a new policy. Had Plaintiffs been aware of the material fact that uninsured/underinsured motorist coverage was not included in the renewed and/or new policy, they would not have purchased the policy.

42. As a direct and proximate result of Nationwide's breach, Plaintiffs have suffered damages in an amount to be proven at trial, but which are in excess of the jurisdictional amount of this Court. These damages include, without limitation, pain and suffering, emotional distress, medical expenses, and future medical expenses, and reasonable and necessary attorneys' fees and costs incurred to pursue Nationwide for the benefits to which Plaintiffs are entitled under the Nationwide Umbrella Policies.

43. In acting as set forth above, Nationwide acted with malice, fraud and oppression with conscious disregard for Plaintiffs' rights, and Plaintiffs are therefore entitled to recover punitive damages from Nationwide in an amount to be proven at trial. In particular, Nationwide knew that it owed duties to Plaintiffs but, to further its own economic interests at Plaintiffs'

expense, Nationwide consciously disregarded Plaintiffs' rights, and refused, and continues to refuse, to provide them with the coverage to which they are entitled. Nationwide has refused and continues to refuse to provide this coverage with the full knowledge that such refusal would cause severe economic hardship to Plaintiffs. On information and belief, all of the alleged acts were performed or ratified by Nationwide's managerial employees, who acted with knowledge that Nationwide's conduct would cause harm to Plaintiffs.

## THIRD CAUSE OF ACTION

### (Negligent Misrepresentation as to All Defendants)

44. Plaintiffs incorporate by reference as though fully set forth herein the allegations set forth in Paragraphs 1 through 43, above.

45. Nationwide issued to Plaintiffs umbrella insurance policies that included uninsured/underinsured motorist coverage beginning in 2006.

46. Plaintiffs are informed and believe, and on that basis allege, that in 2008 Nationwide negligently wrote, drafted, organized, sent notices and/or managed the renewal and/or new policy issuance process such that limitations and/or differences in coverage were not clear and conspicuous, and policyholders would be unlikely to notice or be aware of any differences and/or limitations, with the reasonably foreseeable result that policyholders would be induced to renew the policies, and/or purchase the new policies without knowing that critical coverage provisions were being eliminated.

47. Plaintiffs are informed and believe, and on that basis allege, that Nationwide represented that policyholders generally, and Plaintiffs specifically, would be provided additional information and clarification regarding any changes to their policy, and that a licensed representative would contact them to review their "policies and coverage," but no such materials were sent, and no licensed representatives contacted Plaintiffs to review the changes.

48. Plaintiffs reasonably relied on these representations in renewing their umbrella

policy with Nationwide, and/or purchasing the new policy, and their reliance was a substantial factor in causing the harm suffered by Plaintiffs.

49. As a direct and proximate result of Nationwide's negligence, Plaintiffs have suffered damages in an amount to be proven at trial, but which are in excess of the jurisdictional amount of this Court. These damages include, without limitation, pain and suffering, emotional distress, medical expenses, and future medical expenses, and reasonable and necessary attorneys' fees and costs incurred to pursue Nationwide for the benefits to which Plaintiffs are entitled under the Nationwide Umbrella Policies.

## FOURTH CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing as to Nationwide Mutual and NICOA)

50. Plaintiffs incorporate by reference as though fully set forth herein the allegations set forth in Paragraphs 1 through 49, above.

51. Nationwide owes Plaintiffs an implied duty of good faith and fair dealing under the Nationwide Umbrella Policies to act fairly and reasonably in its investigation, processing, handling and settlement of claims covered under any of the policies.

52. In response to the Plaintiffs' request that Nationwide honor its obligations under the policies to provide uninsured/underinsured motorist coverage for damages resulting from the December 9, 2010 accident involving Gregory Trujillo, Nationwide unfairly, unreasonably and without proper cause denied any obligation to afford those policy benefits to Plaintiffs. Despite repeated requests by Plaintiffs, Nationwide continues to ignore its duty of good faith and fair dealing by knowingly and unreasonably refusing to acknowledge its obligations to Plaintiffs to provide umbrella coverage for the damages resulting from the December 9, 2010. At all times herein, Nationwide has placed its own interests ahead of its policyholders, all to the Plaintiffs' detriment.

53. In addition, among other things, Nationwide has unreasonably and without proper cause adopted unreasonable coverage-limiting interpretations of its coverage obligations, and has

intentionally misled Plaintiffs into believing that they had critical coverage which Nationwide now asserts was not provided. Further, Nationwide has failed to reasonably and timely investigate and respond to Plaintiffs' claim for coverage.

54. As a direct and proximate result of Nationwide's breach, Plaintiffs have suffered damages in an amount to be proven at trial, but which are in excess of the jurisdictional amount of this Court. These damages include, without limitation, pain and suffering, emotional distress, medical expenses, and future medical expenses, and reasonable and necessary attorneys' fees and costs incurred to pursue Nationwide for the benefits to which Plaintiffs are entitled under the Nationwide Umbrella Policies.

55. In acting as set forth above, Nationwide acted with malice, fraud and oppression with conscious disregard for Plaintiffs' rights, and Plaintiffs are therefore entitled to recover punitive damages from Nationwide in an amount to be proven at trial. In particular, Nationwide knew that it owed duties to Plaintiffs but, to further its own economic interests at Plaintiffs' expense, Nationwide consciously disregarded Plaintiffs' rights, and refused, and continues to refuse, to provide them with the coverage to which they are entitled. Nationwide has refused and continues to refuse to provide this coverage with the full knowledge that such refusal would cause severe economic hardship to Plaintiffs. On information and belief, all of the alleged acts were performed or ratified by Nationwide's managerial employees, who acted with knowledge that Nationwide's conduct would cause harm to Plaintiffs.

## FIFTH CAUSE OF ACTION

**(Violations of Business & Professions Code §§ 17200 *et seq*. As To All Defendants)**

56. Plaintiffs incorporate by reference as though fully set forth herein the allegations set forth in paragraphs 1 through 55, above.

57. The misrepresentations and misconduct made and committed by Defendants as set forth above constitute unfair, unlawful and/or fraudulent business practices within the meaning

**COMPLAINT**

of Business & Professions Code § 17200. In addition, the misrepresentations and misconduct violate other statutes including Business & Professions Code § 17500, *et seq.* and Insurance Code §790.03 and related regulations, and/or additional provisions of the insurance code and, accordingly, constitute unlawful acts under Business & Professions Code §17200.

58. As a result of the aforementioned misrepresentations and misconduct, Defendants have acquired monies to which they are not entitled, including without limitation premiums for the above-referenced contracts, and benefits owed to Plaintiffs which are being wrongfully withheld by Defendants. Pursuant to Business & Professions Code § 17203 and § 17535, Plaintiffs seek an Order enjoining Defendants from continuing to make the aforementioned misrepresentations and from continuing to commit the aforementioned acts. In addition, Plaintiffs seek an Order directing Defendants to disgorge all monies they received from the above-referenced contracts and all benefits belonging to Plaintiffs under the Policies but being wrongfully withheld by Defendants.

59. Plaintiffs have incurred and will incur reasonable attorneys' fees in order to enforce the rights described above. Plaintiffs are acting as private attorney generals in pursuing this action involving the enforcement of an important right affecting the public interest, and for the benefit of the general public or a large class of persons.

## SIXTH CAUSE OF ACTION
### (Declaratory Relief as to All Defendants)

60. Plaintiffs incorporate by reference as though fully set forth herein the allegations set forth in Paragraphs 1 through 59, above.

61. Plaintiffs contend that a declaratory judgment is both necessary and proper at this time in order to determine the respective rights and liabilities of the parties regarding Nationwide's obligations to indemnify the Plaintiffs for damages resulting from the December 9, 2010 accident involving Gregory Trujillo.

62. A continuing and justiciable controversy exists between Plaintiffs, on the one hand, and Nationwide, on the other hand, regarding the parties' rights and responsibilities concerning uninsured/underinsured motorist coverage under the Nationwide Umbrella Policies. Plaintiffs contend that all the Nationwide Umbrella Policies provide full uninsured/underinsured motorist coverage for damages resulting from the December 9, 2010 accident involving Gregory Trujillo. Furthermore, Plaintiffs contend that any notice(s) with respect to any alleged changes to the policies in or about 2008 were inadequate and therefore ineffective, such that to the extent the Nationwide Mutual Umbrella policies provide greater coverage than the NICOA Umbrella Policy, Nationwide is bound by the terms of the Nationwide Mutual Umbrella Policy.

63. Plaintiffs are informed and believe, and on that basis allege, that Nationwide contends, on the other hand, that no uninsured/underinsured motorist coverage is available under the 2009-2010 NICOA Umbrella Policy.

## SEVENTH CAUSE OF ACTION

**(Reformation as to All Defendants)**

64. Plaintiffs incorporate by reference as though fully set forth herein the allegations set forth in Paragraphs 1 through 62, above.

65. If the 2010 NICOA Umbrella Policy in fact does not provide uninsured/underinsured motorist coverage, then either (a) the differences were the result of Nationwide's intentional inequitable and/or fraudulent conduct; (b) there was a mutual mistake of fact because Nationwide and Plaintiffs all agreed that the Nationwide Umbrella Policies would include full uninsured/underinsured motorist coverage; or (c) Nationwide knew or had reason to believe that Plaintiffs mistakenly believed that the Nationwide Umbrella Policies included full uninsured/underinsured motorist coverage.

66. Nationwide knew or had reason to believe that Plaintiffs held this mistaken belief because Nationwide knew the importance of full uninsured/underinsured motorist coverage to

Plaintiffs. Furthermore, Nationwide knew or had reason to believe that Plaintiffs thought they were obtaining umbrella policies with full uninsured/underinsured motorist coverage. In addition, Nationwide knew or had reason to believe that Plaintiffs understood they were obtaining policies with full uninsured/underinsured motorist coverage, because Nationwide in fact issued the Nationwide Mutual Umbrella Policy which provided such coverage and knew that the Plaintiffs believed the policies were continuously renewed with the same coverage. In addition, Nationwide knew or had reason to believe that Plaintiffs were not aware of the alleged changes to the policy, and would not have renewed the policy had they known that the policy would no longer provide uninsured/underinsured motorist coverage.

67. As there was either a mutual mistake of fact concerning the existence of full uninsured/underinsured motorist umbrella coverage, or a unilateral mistake of fact on the part of Plaintiffs which Nationwide knew or reasonably should have known, the NICOA Umbrella Policy should be reformed to conform to the parties' expectations, by providing full uninsured/underinsured motorist coverage. Specifically, the 2008-2011 NICOA Umbrella Policies should be reformed to include the same uninsured/underinsured motorist coverage as was available under the 2006-2008 Nationwide Mutual Umbrella Policies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgments against Defendants, and each of them, as follows:

a. For damages resulting from the December 9, 2010 accident involving Gregory Trujillo, up to the limits of the Policy, together with interest thereon;

b. For general and special damages in an amount to be proven at trial, together with interest thereon;

c. For reformation of the Nationwide Umbrella Policies, and each of them, to reflect the true agreement between the parties, *to wit*, that each of the Nationwide Umbrella Policies include uninsured/underinsured motorist coverage;

d.  For exemplary damages in an amount sufficient to punish Defendants in light of Defendants' net worth;

e.  For reasonable and necessary attorneys' fees and costs incurred to pursue Nationwide for the benefits to which Plaintiffs are entitled under the Nationwide Umbrella Policies;

f.  For a declaration that the Nationwide Umbrella Policies and each of them, include uninsured/underinsured motorist coverage;

g.  For preliminary and permanent injunctive relief prohibiting defendants from engaging in the wrongful practices, from continuing to make the aforementioned misrepresentations, and from continuing to commit the aforementioned acts as alleged in this Complaint;

h.  For an award of restitution in an amount according to proof at trial;

i.  For an award of costs and attorney fees as permitted by law, including a lodestar if appropriate;

j.  For an Order directing Defendants to disgorge all monies they received from the above-referenced contracts and all benefits belonging to Plaintiffs under the Policies but being wrongfully withheld by Defendants; and

k.  For such other and further relief as the Court deems proper.

Plaintiffs hereby request a Trial by Jury.

DATED: 12/07, 2012        MEREDITH, WEINSTEIN & NUMBERS, LLP

By: _____
Shanti Eagle
On behalf of Plaintiffs